'Opinión of the Court, by
Ch. J. Boyi.e.
AT the March term 18Q2, of the Jefferson county court, an order was made, a majority of all the justices being present and concurring therein, recommending Benjamin Law'rence and Nicholas Clark, as fit persons, “the first to be appointed And commissioned a justice of the peace,” in the room ofRobert Breckinridge, resigned. On this recommendation, the Governor appointed and commissioned Lawrence, who, after receiving and retaining the commission for some time, transmitted it to the county court, with his refusal to accept the office; and his commission and refusal to accept were afterwards Sent to tb'e Governor, who, on the láth of July 1 '822, without any further recommendation of the county court, or any such recommendation being requested by him, and without the advice and consent of the senate, appointed and commissioned Clark a justice of the peace, during good behaviour.
On the ieceipt of this commission, Clark took the oaths of office and his seat in court; but, at the November term 1822, the court refused to permit him to take his seat, on the ground that bis appointment was unconstitutional and void; and at the January term 1823, Clark presented his commission, with the proper certificate of his having taken the oaths of office, and claimed his seat; but the court again decided his appointment to be unconstitutional, and refused to permit him to take his scat.
Clark then applied to the circuit court of Jefferson, and obtained a mandamus nisi, directed to the county cou,'h To this the county court returned the foregoing statement of facts, and insisted — 1st, That Claik’s remedy, ifany he had, was by an appeal or writ of error f-0 appc]¡ate court, and not by mandamus from the circuit court; 2dly, tbat-lhe circuit court had no jurisdiction of the matter; and 3dly, that the appointment of Clark was unconstitutional.
Upon this return the circuit court awarded a peremptory mandamus, and the justices of the county court, by Consent, have appealed to this coürt.
Governor has appointed’ one of the commended the coun.ty court, he ^ thórised to ita on that re-oommena^ uoa;-
(1) As the question respecting the constitutionality of Clark’s appointment, presents the main point of controversy, we will first consider it, leaving the other points relied on by the county court, as being of a subordinate character, and relating only to the mode of getting at the main point, to, be thereafter discussed, if necessary.
• From the very nature of the point we propose now to examine, it is plain that the constitution itself must furnish the only rule of decision. By the 9th section. ofthe 3d article of the constitution, the Governor is an-thorised. to nominate, and by and' with the advice of the senate, to appoint all officers whose ofijees. are cstab-lished by the constitution, or shall be established by law, and. whose appointments are not, in the constitution, otherwise provided for. Among those officers whose appointments are otherwise provided for by the. constitution, are justices of the peace; and this is done by the 8th section of the 4th article, which declares-, that ‘.‘-when a surveyor, a coroner or.a justice of the. peace shall be needed in any county, the county court for the same, a majority of all. the justices concurring therein, shall recommend to the.Governor, two proper persons to fill the ofiicc, one of whom- he. shalFappoinh thereto: Provided^ however, that if the county court shall, for twelve months, omit to make such recommendation, after being requested by the Governor to recommend proper persons, he shall then nominate, and with the, consént oí the senate, appoint a lit person to fill, such -office,”
Upon. the. proper construction, of this, section, therefore, the point under consideration must-depend. It is perfectly clear, that under this section the Governor, can appoint a justice of the peace, only upon the. recommendation of two proper persons by the county court, unless there be an omission by tlje court, for twelve months, to make such recommendation, after-being requested to do so by the Governor; and he can then only make the appointment with the advice and consent of the senate. .
But it is not pretended that there was in this instance any such omission by the county court, to recommend proper persons, after being requested to do so; and, in fact, the appointment of Clark was made without the advice and consent of the senate. If, then, the appoint* *84 ment can be justified under this section of the constitution, it must be upon the score of the'recommendation by the county court, of Lawrence and Ciarle. But, according to the literal import of the section, the Governor could, on that recommendation, appoint but one of them, and he had appointed and commissioned Lawrence, and se.nt his commission to him. Wheq the Governor had done this, he had evidently done all that the constitution authorised him iodo under that recommendation.
(2) Alii appointment, within the Meaning of the constitution, is completed when the commission is made out, signed by the Governor and transmitted to the person appointed.
The recommendation had performed its office and became functus oficio, and until another recommendation by the county court, of proper persons, or the omission of the court, for twelve months, to make such recommendation, after being requested to do so by the Governor, he could not again act upon the subject, by appointing another to the office.
(2) Thp conclusion to which this argument leads, can only be avoided by disproving sonqe of its premises, and this is attempted to be done on the part of Clark, by contending that, the appointment, without an acceptance of the appointment, is not such an one as is contemplated by the constitution. For, say his counsel, in an ingenious argument with which the court has been furnished, as it is only when there is need of a jusr tice of the peace, that the county court is required to recommend t\vo preper persons to the Governor, the thing tó be done by him is to supply that need by filling the vacant office; and this, as they allege, can.be done only by an appointment which is accepted; and they therefore infer that the transmission of a commission to one of the persons recommended, who refuses to accept, is not, within the meaning of the constitution, an appointment, but a mere offer or tender of an appointment.
This argument is ingenious, and has fhe merit of novelty; but we cannot admit it to be sound. The assumption it makes, that the power of the Governor to act upon the recommendation of.the county court, continues until the need of a justice is supplied by the ae-i ceptance of the office, is entirely gratuitous, and wholly inconsistent with the natqre of the recommendation; for as that is but of two persons, if both of them should refuse to accept the office, there would still be need of a justice; and it surely cannot be pretended, that the *85 Governor could, m that event, act further upon the subject, without a new recommendation; and as he must stop short of supplying the need, in that case, it would seem that he ought to do so on the appointment of one of the persons recommended,, and his refusal to accept, since that is the extent of the power given to him by the constitution.
(3) The ac* ceptance of thin ^dutinc* fronf the appointment, & ggSS^.Iset completion. *
(3) But the argument on the part of Clark is, more-pver, unsound, inasmuch as it confounds the appointment with the acceptance, things which are in themselves perfectly distinct, and to be done by different persons and at different times; for the Governor must make the appointment, and it is the person appointed, who alone can accept the appointment; and, from the very nature of things, the appointment must precede the acceptance. Besides, as the constitution requires the Governor to make the appointment, the argument, by assuming the acceptance of the party appointed, to be necessary to the completion of the appointment, absurdly supposes the framers of the constitution to have required the Governor to do that which depends upon the voluntary act of anpther, over whdm tie has no control.
It cannot be, therefore, that the acceptance of the office by the person appointed, is necessary to complete £he appointment, within the meaning of the constitution; and of course, when a commission is made out, signed by the Qoyernor and transmitted to the person appointed, every act being then done, which it is in the power of the Executive todo, his functions with respect: to the appointment must be at an end, and the appoint-» ment, whether accepted or refused, must be complete.
in fact, the vacancy in the office is, by such an appointment, supplied for the time, insomuch that until the "refusal to accept, by the person appointed, the county court could not recommend others for appointment; nor, if they were to do so, could the Executive make, in the mean time, any other appointment. So completely, indeed, is the vacant office supplied by an appointment, before acceptance, that it is stated by Chief Justice Marshall, in the case of Marberry vs. Madison, 1 Cranch 162, to be the practice of the general government, when a person appointed to any office refuses to accept, the successor is nominated in place of the person who has declined to accept, and not in the *86 place of the person who bad been previously in office,. an created the original vacancy.'*
uoLtmentTof <0. who had been recommended by court with L. after h. had ecPand^had" refused to accept,was un-constitution-A'
(o) A person Monally'com-missioned a justice of the officer’defac-to, and his acts are valid “ rs“'
(6) Where it tae return to a mandamus nisi, for ad-stratfoaT an office, that the appoint-mentwasun-constitutional, a peremptory mandamus should hot be aWarded. [i'
Thruston and Bibb, for appellants; ■ Benny, fora ,i **
We know not what, in this respect, is the practice of the Executive of this State; but there is obviously, in the practice of the general goyernment, an intrinsic fit-ncss an0 ‘pr°prieiy; for, otherwise, as an.appointment may be refused verbally, there would be nothing in the records of the executive department, to show the re-faga] and two or more appointments would appear to have been made, to nil the sam,e vacancy,
(4) It results, then, as under the constitution the Governor cou^ appoint but one of the persons recommend-ec^ by the county court, and he had, in virtue of the recommendation, in- this instance, appointed Lawrence, that the subsequent appointment of Clark, on the same recommendation, was'unconstitutional; and if so, it is plain that Clark cannot have a legal right to the office.
(5) His official acts are, no doubt-, valid; for it has been repeatedly decided by this c-ourt, that the acts of an officer de facto, are not void; but as the plaintiff in the mandamus, seeking tobe restored to his'seat, it is not sufficient to show that he is an officer defacto merely,
(6) He must, as the plaintiff in every other case must do, show a legal right to.that which he demands; and having failed to do so, the award-of a peremptory mandamus by the circuit court is erroneous,
The decision of this point being against Clark, His .. .. . . . county court. unnecessary to notice the others relied upon, by the
1 hejudgment must be reversed with costs.

 The practioe is the same in the Executive office of this State, In relation to the constitutional question discussed in this opinion, it maybe proper for the Reporter to state, that though the casq which gave vise to it occurred before his appointment as Secretary of Slate, he understands the commission was issued without due consideration,-and is a solitary instance; and that shortly after-wards, and before the argument of the case in this court, an application having been made for the appointment of a justice under similar circumstances, the Executive considered: the question, and determined in accordance with this decision; so that, on this subject* there ijvas no difference of opinion between the appellate court and’ the Executive.